2025 IL App (1st) 241203-U

FOURTH DIVISION
Order filed: January 30, 2025

No. 1-24-1203

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| KASHIF RIAZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHWESTERN MEMORIAL HOSPITAL, | ) | |
| NORTHWESTERN FACULTY FOUNDATION, d/b/a | ) | |
| NORTHWESTERN MEDICAL GROUP, and GEORGE | ) | |
| CYBULSKI, M.D., | ) | |
| | ) | |
| Defendants | ) | No. 2018 L 013053 |
| | ) | |
| (THE LAW OFFICE OF STEPHANIE K. | ) | |
| NATHANSON, | ) | Honorable |
| | ) | Kathy M. Flanagan, |
| Petitioner-Appellant). | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's order granting as modified the petitioner's attorney fee petition based on *quantum meruit* is affirmed. The circuit court did not abuse its discretion 1) in declining to award a full contingency fee without an evidentiary hearing; 2)

by determining a fee award without an evidentiary hearing; and 3) in awarding a fee based on the hours the petitioner spent working on the case as modified.

¶ 2     The petitioner, the Law Office of Stephanie K. Nathanson, appeals from an order of the Circuit Court of Cook County granting as modified its petition for attorney fees based on *quantum meruit* for work it performed prior to discharge in the underlying medical malpractice action filed on behalf of the respondent, Kashif Riaz.  For the reasons which follow, we affirm the circuit court's order.

¶ 3     On September 6, 2018, the respondent retained the petitioner to represent him in a medical malpractice action. The attorney-client contract entered into between the petitioner and the respondent provided for a contingency fee of one-third of all sums recovered through settlement, judgment, or otherwise. The petitioner filed suit on behalf of the respondent on December 14, 2018, against the defendants, Northwestern Memorial Hospital and Northwestern Faculty Foundation, d/b/a Northwestern Medical Group (collectively, "Northwestern"), George Cybulski, M.D., John Bailitz, M.D., and Robert Turelli, M.D. (hereinafter referred to as the underlying action).  The complaint alleged that the defendants were negligent in failing to diagnose and properly treat the respondent's spinal condition. The matter proceeded to discovery, which was overseen by the Honorable Kathy M. Flanagan through the duration of the case.

¶ 4     On April 16, 2023, the respondent discharged the petitioner as his counsel, and on April 18, 2023, the law firm of Deratany and Kosner filed an appearance on behalf of the respondent. On May 17, 2023, the petitioner filed a motion to withdraw as counsel for the respondent and for a reimbursement of costs. The motion also reserved the right to pursue a *quantum meruit* claim for attorney fees once the case concluded. On May 22, 2023, the circuit court granted the motion to withdraw and ordered that the petitioner's claimed costs of $66,621.88 remained as a lien against

any recovery in the case. The circuit court retained jurisdiction over the case to hear the petitioner's attorneys fee claim.

¶ 5    The underlying case continued on with Deratany and Kosner serving as counsel for the respondent.  On May 9, 2023, the respondent moved to voluntarily dismiss Drs. Bailitz and Turelli as defendants.

¶ 6    On November 14, 2023, the underlying case was assigned for trial before Judge Jean M. Golden.  On November 15, 2023, the respondent and the remaining defendants presented their respective motions *in limine*.  The respondent moved, *inter alia,* to bar certain testimony by defense experts, Drs. Herman and Sze.  After arguments from the parties, Judge Golden ruled that Dr. Herman, a defense expert, could testify to a multi-factorial cause of any injury to the respondent but could not state that the respondent's diabetes was the sole cause of any injury. Judge Golden also barred Dr. Sze, from testifying that the posterior decompression of the respondent's spine as seen in an x-ray film was "common".

¶ 7    In the afternoon of November 15, 2023, after the motions *in limine* were resolved, the respondent and the defendants reached an agreement settling the action for $3.85 million.  Judge Golden entered an agreed order dismissing the action against Dr. Cybulski, but the order did not provide for the dismissal of Northwestern.  However, on November 17, 2023, Judge Golden entered an order dismissing the underlying action with prejudice pursuant to the settlement agreement entered into between the respondent and the Northwestern defendants.  The order also provides that the court retained jurisdiction to adjudicate any liens or to enforce the settlement.

¶ 8    On November 29, 2023, the matter was returned to Judge Flanagan for resolution of the petitioner's claim for an award of attorney fees and costs.  Judge Flanagan entered an order

directing respondent's attorney to have the settlement order amended to reflect the settlement was also with Northwestern. The order also directed the petitioner to file its fee petition by December 27, 2023, and the respondent to file his response to the petition by January 31, 2024. No provision was made in the order for the filing of a reply by the petitioner. The order indicates that it was drafted by someone from the petitioner's law firm, and we find nothing in the record suggesting that the petitioner requested an opportunity to file a reply. Judge Flanagan told the parties that the court would inform them as to whether, based on their filings, an evidentiary hearing was needed.

¶ 9 The petitioner filed its fee petition on January 3, 2024, requesting that the circuit court award it a full contingency fee of one-third of the settlement between the respondent and Northwestern plus $66,621.88 for costs. Attached as an exhibit to the petition was an exhibit containing an itemized statement of the hours expended by the petitioner in the representation of the respondent in the underlying case which totaled 726.35 hours and setting forth each activity performed, the time spent, and the individuals in the petitioner's law firm performing each activity. The petition asserted that the hourly billing rates for the individuals in the petitioner's law firm rendering the services listed are as follows: Nathanson $450, Michael Peterson $375, Rebecca Borowicz $300, and Jannel Sandoval $200. The petition was also supported by Stephanie K Nathanson's (Nathanson) affidavit. The petition did not request an evidentiary hearing.

¶ 10 On January 30, 2024, Deratany and Kosner filed a response to the fee petition. The response acknowledged that the underlying case was settled for $3.85 million. It alleged that 102.2 of the hours that the petitioner claimed to have rendered services in its representation of the respondent were performed after the petitioner was discharged as the respondent's attorney and also questioned the reasonableness of other entries in the statement attached to the petition. The

response argued that the petitioner's claimed hours of service should be reduced to 573.04 to be paid at the hourly rates set forth in the petition. The response also alleged that the costs claimed by the petitioner should be reduced by $8,275, representing bills that were paid by Deratany and Kosner after the petitioner's discharge. In conclusion, the response argued that the reasonable value of the petitioner's services is $231,978.78 for 573.04 hours worked on behalf of the respondent plus $58,571.88 for costs incurred. The response was supported by the affidavits of Kosner, the respondent, and Daniel Mills, an attorney for the defendants in the underlying action. Mills' affidavit was later withdrawn. The response asserted that an evidentiary hearing on the petition was necessary due to disputed factual issues.

¶ 11 On February 13, 2024, a day before a hearing was set on the fee petition, Nathanson sent an email to the circuit court with two affidavits. The first affidavit was executed by Rebecca Borowicz, a junior associate of the petitioner, correcting minor errors in the itemized list of hours attached to the original petition. The second affidavit was from Nathanson, which disputed assertions made in the response to the petition, specifically contesting the idea that Kosner changed the theory of the case, disputing an assertion by Kosner that the parties argued the motions *in limine* for two days based on the transcript indicating that it only took approximately two hours, and providing additional information surrounding the petitioner's discharge. Nathanson's second affidavit also contested the settlement posture of the parties prior to the petitioner's discharge. The respondent objected to the additional submissions, noting that the court's briefing schedule did not provide for any reply in support of the fee petition. Judge Flanagan responded by email to the parties stating that the ruling on the petition was set for the next day and that no additional materials were needed.

¶ 12  On February 14, 2024, the circuit court issued a written order granting the petition as modified without an evidentiary hearing. The written order recounted the procedural history of the case through settlement, finding that there was a difference in settlement offers and a change in the theory of the respondent's case after Deratany and Kosner began representing the respondent. The court found that the petitioner was not entitled to the full amount of one-third of the settlement, as the case was not "on the cusp" of settlement prior to the petitioner's discharge and also finding that it was Kosner's work on the motions *in limine* and preparation for trial that was the "driving force" in procuring the settlement of the case.

¶ 13  In determining a reasonable fee award for the petitioner, the circuit court used the hours provided by the petitioner in the fee petition and made modifications to arrive at the final fee award. The modifications made by the circuit court included: (1) excluding work done by the petitioner on a motion to vacate a dismissal for want of prosecution filed on April 8, 2022, attributing the dismissal to attorney error; (2) excluding services rendered post-discharge; (3) excluding certain duplicative entries; (4) reducing time for entries that were unreasonable, such as billing a half of an hour for "review of a certificate of service"; (5) excluding hours claimed for expert and legal research or "investigation" time; and (6) reducing time for reviewing an opposing motion. The court attached to its order a copy of the itemized billing statement which was attached to the fee petition and indicated on that statement which entries were deleted or reduced from the hours originally claimed. The court applied Nathanson's uncontested hourly rate of $450 to all remaining hours, finding that the petitioner's other attorneys and a legal assistant who billed time did not perform the bulk of services. In total, the circuit court awarded the petitioner $253,485.00 in attorney fees for 563.30 hours of work. The court also deducted the unpaid invoices of $8,275

which were forwarded to Deratany and Kosner from the costs claimed by the petitioner and awarded the petitioner a total of $58,346.88 for costs incurred.

¶ 14 On March 15, 2024, the petitioner filed a motion to reconsider the circuit court's February 14, 2024, order awarding attorney fees and costs. The motion argued that the circuit court erred by failing to hold an evidentiary hearing, failing to allow for a reply, and by failing to consider Nathanson's affidavit submitted on February 13, 2024. According to the motion, the response to the fee petition raised factual assertions that the circuit court took as fact without holding an evidentiary hearing. The motion also asserted that there had been no change in the theory of the case as the court had found in its February 14, 2024, order and argued that it would be unjust for Deratany and Kosner to receive 80% of the attorneys fee for taking three depositions and preparing an expert disclosure before settling the case when the petitioner spent over four years representing the respondent.  On May 6, 2024, the circuit court issued a five-page written order, denying the motion to reconsider and detailing the reasons for its ruling.   This appeal followed.

¶ 15 In its brief the petitioner argues that the circuit court abused its discretion by: 1)  failing to hold an evidentiary hearing on its fee petition, 2) failing to allow it to file a reply to the response filed in opposition to its petition, 3)  failing to allow oral argument on the petition, and 4) failing to award it a fee equal to one-third fee of the amount for which the underlying action was settled.

¶ 16 We will address together the questions of whether the circuit court abused its discretion by denying the petitioner's claim for a fee equal to one-third of the settlement amount and whether the circuit court abused its discretion by deciding the issue without an evidentiary hearing.

¶ 17  In its brief, the petitioner contends that there were material factual issues that required an evidentiary hearing to resolve, listing 10 such facts: 1) "Whether a mediation occurred [in the

underlying case] and, if so whether it was done in good faith (prior to the *** [respondent's] new liability expert being disclosed);" 2) "What factors impacted any offer that was given at that mediation;" 3) "Whether the mediation holds any weight in evaluating ***[the petitioner's] quantum meruit claim;" 4) "Whether the 'theory of the case' changed and, if so, whether that change impacted the settlement or potential verdict value on the case;" 5) "The reason(s) prior experts withdrew from the case;" 6) "The amount offered (and the reasons for that amount being offered) prior to the close of expert discovery;" 7) "The amount offered (and the reasons for that amount being offered) immediately before trial;" 8) "Whether any (and which) motions in limine were argued and ruled upon;" 9) "The amount offered (and the reasons for that amount being offered) after the supposed rulings on motions in limine;" and 10) "The amount of time actually spent by Kosner (i.e., one morning vs. 2-3 days of arguing motions in limine)." According to the petitioner, Nathanson's and Kosner's affidavits contradict one another as to these questions. The respondent argues that there were no material fact questions that needed to be resolved in order for the circuit court to rule on the fee petition. He takes the position that the issues identified by the petitioner as needing to be resolved at an evidentiary hearing were not outcome determinative and irrelevant to a resolution of the petition. For the reasons which follow, we agree with the respondent.

¶ 18    When, as in this case, an attorney retained pursuant to a contingency agreement is discharged, the attorney is entitled to reasonable compensation for services rendered on the basis of *quantum meruit. Andrew W. Levenfeld & Associates, Ltd. v. O'Brien*, 2024 IL 129599, ¶ 53; *In re Estate of Callahan,* 144 Ill. 2d 32, 40 (1991); *Rhoads v. Norfolk & Western Ry. Co.,* 78 Ill. 2d 217, 230 (1979). The circuit court has broad discretionary powers in awarding attorney fees and

its decision will not be reversed on appeal unless that discretion is abused. *In re Estate of Callahan,* 144 Ill. 2d at 43-44.

¶ 19 Whether to conduct an evidentiary hearing is also a matter within the discretion of the circuit court *A.L. Dougherty Real Estate Management Co. v. Su Chin Tsai*, 2017 IL App (1st) 161949, ¶ 46. An evidentiary hearing on a fee petition is required only when the party opposing the petition creates an issue of fact "that cannot be resolved without further evidence." *Young v. Alden Gardens of Waterford, LLC*, 2015 IL (1st) 131887, ¶ 113. In determining whether the circuit court abused its discretion, we do not decide whether we merely disagree. We will reverse the circuit court only if we find that it "'acted arbitrarily without the employment of conscientious judgement or, in view of all circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.'" *May v. SmithKline Beecham Clinical Laboratories,* 304 Ill. App. 3d 242, 246 (1999) (quoting *Zurich Insurance Co. v. Raymark Industries, Inc.,* 213 Ill. App. 3d 591, 594-95 (1991)).

¶ 20 As a preliminary matter, we note that in its brief the petitioner asserts that it and the respondent both requested an evidentiary hearing on the fee petition. To be precise, the petitioner did not request an evidentiary hearing in its petition or at the time that the petition was filed. The petitioner first requested an evidentiary hearing in its motion to reconsider. It is true that the respondent requested an evidentiary hearing in his response to the petition. However, the petitioner cannot rely on the respondent's request to support a claim of error based on the circuit court's failure to conduct an evidentiary hearing. See *Powell v. Dean Foods Co.* 2012 IL 111714, ¶ 36 ("A party must assert its own legal rights and interests, rather than assert a claim for relief based on the rights of third parties."). By failing to request an evidentiary hearing on its fee

petition, the petitioner essentially conceded that the matter could be decided without an evidentiary hearing. *Demitro v. General Motors Acceptance Corporation.,* 388 Ill. App. 3d 15, 22 (2009).

¶ 21 An award of a full contingency fee to a discharged attorney is proper when a case settles immediately after the attorney's discharge. *Andrew W. Levenfeld & Associates, Ltd.*, 2024 IL 129599, ¶ 60. The petitioner does not assert, and the record does not reflect, that the defendants in the underlying case made any offer of settlement during the period that it represented the respondent. Further, it cannot be seriously argued that the underlying case settled immediately after the petitioner was discharged. These two facts distinguish this case from the cases of *Andrew W. Levenfeld & Associates, Ltd*, 2024 IL 129599, *Will v. Northwestern University,* 378 Ill. App. 3d 280 (2007), and *Wegner v. Arnold,* 305 Ill. App. 3d 689 (1999), upon which the petitioner relies.

¶ 22 In *Andrew W. Levenfeld & Associates, Ltd.*, the defendants retained the plaintiff law firms on October 29, 2015, pursuant a written contract which provided, *inter alia*, that the defendants agreed to pay the plaintiffs 15% of the first $10,000,000 of assets recovered from the O'Brien estates and related entities (collectively referred to as O'Brien Estate) and 10% of any additional values of assets recovered. *Andrew W. Levenfeld & Associates, Ltd*., 2024 IL 129599, ¶ 7. During the course of their representation of the defendants in various actions in the circuit court of Cook County, the United States District Court for the Northern District of Illinois, the Illinois Appellate Court, and the circuit court of Barrien County, Michigan, the plaintiff law firms spent approximately 3000 hours of attorney and paralegal time over a period of 19 months. *Id.* ¶¶ 32, 42. From September 2016 through May 1, 2017, the defendants and the O'Brien Estate engaged in settlement negotiations consisting of offers, demands and counter offers. On May 1, 2017, the O'Brien Estate made a $16.25 million settlement offer to the defendants. On May 8, 2017, the

plaintiffs provided the defendants with a recommended demand totaling $16.75 million, but the defendants did not authorize the plaintiffs to convey the demand to the O'Brien Estate. On May 10, 2017, the O'Brien Estate withdrew its May 1, 2017, $16.25 million settlement offer. On May 25, 2017, the defendants discharge the plaintiffs as their attorneys. Fifty-seven days later, on July 21, 2017, the defendants accepted a $16.85 million settlement offer from the O'Brien Estate. *Id.* ¶¶ 34-35. The circuit court found that the settlement was reached shortly after the plaintiffs were discharged and could be substantially attributed to the plaintiffs' efforts. The circuit court used the contingency fee structure contained in the October 29, 2015, written retainer agreement to calculate the amount of fees it awarded to the plaintiffs. That method of calculation was affirmed by the supreme court. *Id.* ¶¶ 45-46, 77.

¶ 23    In *Will,* the plaintiffs, as coadministrators of the estate of their deceased son, filed a wrongful death and survival action against the defendants. *Will,* 378 Ill. App. 3d at 282. Following years of litigation, the attorney representing the estate negotiated a $16 million settlement. One of the coadministrators rejected the settlement. *Id.* at 285. Three months later the attorney was discharged. *Id.* at 306. Two months after the attorney was discharged and before the estate was represented by new counsel, the circuit court ordered the estate to accept the $16 million settlement offer. *Id.* at 306. The circuit court held that the discharged attorney was entitled to the full one-third of the recovery pursuant to a contingency fee agreement. *Id.* at 287. On appeal, this court found that the circuit court did not abuse its discretion in awarding the discharged attorney the full one third of the recovery pursuant to a contingency fee agreement. *Id.* at 305.

¶ 24    In *Wegner,* the attorney agreed to represent the plaintiff estate in a wrongful death action pursuant to a contingency fee agreement dated September 13, 1996. The agreement provided that

the attorney would be entitled to one-third of the gross amount recovered through settlement, suit, or trial. *Wegner,* 305 Ill. App. 3d at 691. On August 28, 1997, the attorney was discharged and was notified that substitute counsel would be representing the plaintiff estate in the pending action. *Id.* Two days prior to the attorney's discharge, the defendant's attorney recommended to the defendant's insurer that it offer the $100,000 policy limit in settlement of the case. *Id.* at 692. On November 17, 1997, the defendant made a formal settlement offer of $100,000 to the estates new counsel. *Id.* The discharged attorney filed a petition seeking an award of fees and costs, and the circuit court awarded him $7000. *Id.* at 693. The discharged attorney appealed, contending that he was entitled to a full one-third of the $100,000 settlement for his *quantum meruit. Id.* at 690-91. This court vacated the circuit court's fee award and remanded the matter with directions to award the discharged attorney his one-third contract fee less the amount that is to be awarded to the successor attorney in *quantum meruit. Id.* at 697.

¶ 25 Unlike the circumstances present in *Andrew W. Levenfeld & Associates, Ltd*., *Will,* and *Wegner,* this case was not settled for an amount negotiated or offered prior to the petitioner's discharge. It is uncontroverted that the defendants in the underlying action made no offer of settlement while the petitioner was representing the respondent, a fact that is undisputed. We are at a loss to understand what could have been brought forth by the petitioner at an evidentiary hearing, a reply in support of its fee petition, or in an oral argument to the circuit court in support of the petition that would have established the petitioner's entitlement to a full one-third contingency fee. Clearly, Deratany and Kosner represented the respondent following the petitioner's discharge and it was Kosner that negotiated the $3.85 million settlement with Northwestern. These facts were all well known to the circuit court when it ruled on the fee petition.

As we noted earlier, a discharged attorney may be entitled to a fee award equal to the full contingency fee set forth in a retainer agreement when a case settles immediately after the attorney's discharge. This is not such a case. We conclude that the circuit court did not abuse its discretion in failing to award the petitioner a full one-third contingency fee without an evidentiary hearing.

¶ 26 Although we have found that the circuit court did not abuse its discretion in denying the petitioner a full one-third fee without an evidentiary hearing, the petitioner was still entitled to a reasonable fee for the work it performed on the underlying case. *Andrew W. Levenfeld & Associates, Ltd.*, 2024 IL 129599, ¶ 53; *DeLaPaz v. SelectBuild Const., Inc.*, 394 Ill. App. 3d 969, 976 (2009). Our task at this juncture is to determine both whether the circuit court abused its discretion in failing to hold an evidentiary hearing in determining a reasonable fee to be awarded to the petitioner and, in the absence of an abuse of that discretion in failing to hold an evidentiary hearing, whether the circuit court abused its discretion in awarding the petitioner $253,458.00 for its fees in representing the respondent and $58,346.88 for costs incurred.

¶ 27 Because the termination of an attorney creates liability in *quantum meruit* for the reasonable value of the services rendered, the elements of *quantum meruit* are established as a matter of law. *Andrew W. Levenfeld & Associates, Ltd.*, 2024 IL 129599, ¶ 55; *Rhoads,* 78 Ill. 2d at 227-28. In determining the reasonable value of an attorney's services to be awarded in *quantum meruit*, the factors for the circuit court's consideration are (1) the attorney's skill and standing, (2) the time and labor required, (3) the nature of the cause and the difficulty of the issues involved, including the amount of money at issue, (4) the novelty and difficulty of the subject matter, (5) the attorney's degree of responsibility in managing the case, (6) the usual and customary charge for

that type of work in the community, and (7) the benefits resulting to the client. *In re Estate of Callahan*, 144 Ill. 2d 32, 44 (1991). The petitioner argues that the circuit court failed to address those factors. Specifically, it contends that the circuit court made no reference or finding relating to Nathanson's skill or standing, the nature of the action, the novelty and difficulty of the subject matter, Nathanson's degree of responsibility in managing the case, or the usual and customary charge in the community for the type of work performed.

¶ 28 In her February 14, 2024, order awarding fees to the petitioner, Judge Flanagan specifically found that the respondent received a benefit from the services performed by the petitioner. As to the time required in the petitioner's representation of the respondent, the circuit court noted that it had reviewed the itemized fee petition submitted by the petitioner. As recited earlier, attached to the petition for fees filed by the petitioner was an exhibit containing an itemized statement of the hours expended by the petitioner in its representation of the respondent which totaled 726.35 hours. The exhibit itemized each activity performed, the time spent, and the attorney or legal assistant in the petitioner's law firm that performed the activity. With the exception of the time disallowed, the circuit court awarded the petitioner fees for the amount of time claimed at the rate of $450 per hour. Contrary to the petitioner's assertion, the circuit court's use of $450 per hour in calculating the fees awarded was not arbitrary. In its fee petition, the petitioner asserted that Nathanson's hourly billing rate is $450, and her hourly billing rate was the highest of all individuals listed as having rendered services to the respondent in the underlying case. In its response to the fee petition, the respondent did not challenge the hourly billing rates. Because the circuit court specifically found that the services rendered by the petitioner benefited the respondent and used Nathanson's uncontested $450 hourly billing rate, the petitioner cannot claim prejudice in the

circuit court's resolution of either issue without conducting an evidentiary hearing, affording it an opportunity to file a reply in support of its petition or failing to allow for argument on the petition. Having awarded fees at Nathanson's hourly rate of $450 as claimed by the petitioner itself, there was no further need for the circuit court to address Nathanson's skill and standing as an attorney, her degree of responsibility in managing the case, or the usual and customary charge for the services rendered. We are left then with the remaining factors for consideration; namely, the time required to perform the services rendered by the petitioner, the amount of money at issue and the novelty and difficulty of the subject matter.

¶ 29 In resolving a fee petitions, the judge may and should rely on her own knowledge and experience. *McHenry Savings Bank v. Autoworks of Wauconda, Inc.,* 399 Ill. App. 3d 104, 113 (2010); see also *Will,* 378 Ill. App. 3d at 304. When, as in this case, the judge presiding over a fee petition proceeding also presided over the case for most of its duration, the judge can draw on that knowledge to determine whether the fees sought are reasonable without hearing testimony. *Young*, 2015 IL App (1st) 131887, ¶ 114.

¶ 30 Judge Flanagan not only ruled on the fee petition in this case, she also presided over the underlying case both during the time that the respondent was represented by the petitioner and during the time that the respondent was represented by Deratany and Kosner up to the date the case was assigned to Judge Golden for trial. The record reflects that from January 14, 2019, less than six weeks after the underling case was filed, until the petitioner was discharged as respondent's attorney on April 16, 2023, the case came before Judge Flanagan for case management purposes in excess of 22 times. Judge Flanagan entered orders relating to pleadings and discovery, including expert discovery. After the petitioner was discharged and while the

respondent was represented by Deratany and Kosner, the underlying case came before Judge Flanagan for case management approximately 9 times, following which she entered orders regulating discovery. Judge Flanagan's extensive involvement in the underlying case is apparent from the orders which she entered which are contained in the common law record and without reference to any affidavit submitted in support of or in opposition to the fee petition. Further, the February 14, 2024, fee order specifically states that the court (Judge Flanagan) observed the performance of the petitioner from the date of the filing of the underlying case up to the date of the petitioner's discharge. Clearly, the court, based on its extensive supervision of the underlying case both during the period that the respondent was represented by the petitioner and after, was aware of the amount of money at issue and the novelty and difficulty of the subject matter, without the need for an evidentiary hearing, a reply in support of the petition, or argument before ruling.

¶ 31    Determining the amount of time spent in performing legitimate services for the client and then multiplying that time by a reasonable hourly rate, as the circuit court did in this case, is the best way to determine the reasonable value of a discharged attorney's services. *Johns v. Klecan,* 198 Ill. App. 3d 1013, 1021 (1990). The circuit court in this case took the itemized statement of the number of hours of services performed by the petitioner during its representation of the respondent which totaled 726.35 hours, subtracted from the total claimed hours of activity those hours it found inappropriate, and then multiplied the remaining 563.30 hours by Nathanson's hourly billing rate of $450 to arrive at the $253,485.00 that it awarded to the petitioner.

¶ 32    The petitioner made no argument in its brief addressed to the propriety of the mathematical calculation made by the circuit court or to the circuit court's disallowance of fees for 163.05 hours of time that the petitioner claimed was expended in representing the respondent. As a

consequence, any claim of error based on either argument has been forfeited. Ill. S. Ct. R 341(h)(7) (eff. Oct. 1, 2020).

¶ 33     Forfeiture aside, we find no error in the manner in which the circuit court calculated the fee award or in its disallowance of certain claimed hours of service in arriving at the fees awarded. "The trial court's determination as to an appropriate award of attorney fees must be considered in light of the principle that the trial judge is permitted to use his own knowledge and experience to assess the time required to complete particular activities, and a court of review may not reverse an award of attorney fees merely because it may have reached a different conclusion." *Chicago Title & Trust Co. v. Chicago Title & Trust Co.*, 248 Ill. App. 3d 1065, 1074 (1993).  When a trial court reduces the amount requested in a fee petition, the court's ruling should include the reasons justifying a particular reduction. *Shortino v. Illinois Bell Telephone Co.,* 279 Ill. App. 3d 769, 773 (1996).

¶ 34     In its February 14, 2014, order, the circuit court specifically set forth its reasons for disallowing portions of the time claimed by the petitioner in its representation of the respondent as set forth in the exhibit attached to its fee petition.  The court found that the 102.2 hours claimed for work done post-discharge were not compensable.  It disallowed time claimed for vacating a dismissal for want of prosecution that the court found was entered "due to the attorney's failure to submit the required case management email report."  The court also disallowed hours that it found to be duplicative, excessive, or part of normal overhead expenses.  We find that the circuit court's disallowance of portions of time claimed by the petitioner to have been expended in its representation was made based on its assessment of the hours claimed and its knowledge and experience with this case. The circuit court was in a superior position to determine whether the

dismissal for want of prosecution was due to attorney error, and whether the work done by the petitioner after discharge conferred no benefit to the respondent; both categories of hours were properly excluded without an evidentiary hearing. The other modifications were reductions for duplicate activities, time spent preparing or reviewing simple documents or motions, and vague entries for "research". We find that all these reductions and exclusions were within the knowledge and experience of the circuit court regarding the benefit claimed activity to the respondent and the time needed to complete certain tasks.  It was well within the circuit court's discretion to resolve these matters without an evidentiary hearing.  See *A.L. Dougherty Real Estate Management Co*, 2017 IL App (1st) 161949, ¶¶ 49-50 (finding that circuit court did not abuse discretion by denying request for an evidentiary hearing when circuit court evaluated petition and "disallowed or reduced numerous entries for fees that were excessive, not recoverable, or insufficiently supported"). Further, find no basis to conclude that the circuit court's disallowance of any of the hours claimed was arbitrary, made without the employment of conscientious judgement, exceeded the bounds of reason or ignored recognized principles of law.

¶ 35    In its briefs, the petitioner argues that there are factual controversies raised by the affidavits submitted in support of and in opposition to its fee petition which required an evidentiary hearing to resolve.  However, the disputed facts relate in the main to services performed by Deratany and Kosner and specifically Kosner as substitute counsel and the reasons for the petitioner's discharge. Those factual disputes relating to specific services performed by Kosner or the time that it took to perform those services are neither outcome determinative or relevant to a determination of the reasonable fees to which the petitioner is entitled, nor are the reasons for the petitioner's discharge. The circuit court was called upon to determine a reasonable fee to be awarded to the petitioner

based on *quantum meruit,* for the services it performed in representing the respondent. It was not called upon to determine a reasonable fee for Deratany and Kosner. Nor was the circuit court tasked to determine the reasons for the petitioner's discharge. The facts necessary to the determination of a reasonable fee for the petitioner's services in this case were matters within the knowledge and experience of the judge who presided over both the fee petition proceeding and the underlying case in addition to facts taken from the petitioner's own petition and exhibit. We find no abuse of discretion in the circuit court having resolved the fee petition without an evidentiary hearing. Further, to the extent that the petitioner also argues that the circuit court abused its discretion by not affording it the right to file a reply to the response filed in opposition to its fee petition or by failing to consider the affidavits sent via email on the eve of the scheduled ruling on the petition, we also find no abuse of the discretion. *TIG Ins. Co. v. Canel*, 389 Ill. App. 3d 366, 375 (2009) (circuit court has discretion to grant or withhold permission regarding a briefing schedule). Nathanson was present when the circuit court set the briefing schedule on the fee petition and did not request the opportunity to file a reply, nor did the petitioner ever make a formal request by motion for leave to file a reply.

¶ 36     The petitioner also argues that the circuit court abused its discretion in awarding it less than 20% of the total attorney fee to be paid from the proceeds of respondent's settlement of the underlying case. The argument appears to be based on a comparison/apportionment approach to the award of attorney fees, which entails comparing the services provided by a discharged attorney with the services provided by the successor attorney and then awarding the portion of the recovery allocable to attorney fees to the attorneys based on the ratio of work performed by each. *DeLaPaz, Inc.*, 394 Ill. App. 3d at 976. However, the comparison/apportionment approach has been rejected

by this court. *Id.* at 975-76; *Susan E. Loggans & Associates v. Estate of Magid,* 226 Ill.App.3d 147, 168 (1992). Rather, a discharged attorney is only entitled to the reasonable value of the services rendered during the period of employment. *In re Estate of Callahan,* 144 Ill. 2d at 41-42. That determination was correctly made by the circuit court in this case by multiplying the amount of time that the petitioner spent performing legitimate services for the respondent and then multiplying that time by Nathanson's hourly rate.

¶ 37 The petitioner's brief also asserts, in the first paragraph of the argument section, that the circuit court abused its discretion in denying its motion to reconsider. In the concluding paragraph of its brief the petitioner requests that this court reverse the circuit court's May 6, 2024, order denying its motion to reconsider. However, the petitioner has cited no authority addressed to the propriety of the circuit court's denial of its motion to reconsider. As a reviewing court, we are entitled to have the issues on appeal clearly defined and arguments supported by pertinent authority. *In re Marriage of Solano,* 2019 IL App (2d) 180011, ¶ 70; *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) provides, in relevant part, that arguments "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Arguments not supported by citation to relevant authority are forfeited. *Vernon Hills Illinois Limited Partnership v. St. Paul Fire & Marine Insurance Co.,* 287 Ill. App. 3d 303, 310-11 (1997). Having failed to cite any authority in support of its argument that the circuit court abused its discretion in denying its motion to reconsider its February 14, 2024, order awarding attorney fees and costs, the petitioner has forfeited the argument.

¶ 38    Having found that the circuit court did not abuse its discretion when, without an evidentiary hearing, it awarded the petitioner $253,485.00 in attorney fees for its representation of the respondent prior to discharge plus $58,346.88 for costs incurred, we affirm the circuit court's order of February 14, 2024, and also affirm its order of May 6, 2024, denying the petitioner's motion to reconsider.

¶ 39    Affirmed.